Good morning. Good morning. May it please the Court, my name is Kelsey Beckner and I represent Mr. Juan Guzman-Ramirez. I would like to reserve five minutes for rebuttal. We'll try to help you, but keep your eye on the clock, okay? Thank you. The petitioner is asking that his prior removal order be vacated and that he have the opportunity to be returned to the United States for a full and fair hearing, including an evidentiary hearing in his case. This Court should review, first of all, Mr. Guzman's underlying removal order because he suffered a gross miscarriage of justice in that underlying removal order. First, Mr. Guzman was the victim of a race-based stop in Montana on April 20, 2007, when he was first apprehended and put into ICE detention three days later on April 23, 2007. Counsel, with respect, before we get to that, under 1252B1, a petition for review has to be filed no later than 30 days from the date of a final order of removal. That didn't happen here, obviously. Why isn't that a jurisdictional issue for us? I understand from Garcia-Rincon that this issue was discussed in that case, and they decided that the one exception to that jurisdictional issue, based on constitutional and legal grounds, is that when there has been a gross miscarriage of justice, this Court has the opportunity to review the underlying removal order. I think that exception has been so narrowly defined that I do not know of any case where a gross miscarriage of justice has been found by this Court. So you don't know of one where that has been found, right? Not that I know of, no. Given that fact, and given the fact that what you allege happened occurred so long ago, how do we then bridge that time gap? We're talking years and years and years and years. I understand, and I think this case is a good example of how these violations can happen, and how when an immigrant is unrepresented for years, that these type of violations can be unrecognized, unaddressed for years. And it was only when he finally had counsel years later that he was able to understand fully that his Fourth Amendment rights were violated, that he should have had more process in his underlying hearing, that an immigration judge should have asked him whether he intelligently waived his right to a hearing, and whether he fully understood his rights, as well as that he fully understood that he waived his right to counsel. The immigration judge never did that in his underlying hearing. Well, and nobody did that in those days, right? That wasn't what the law required in those days, right? Well, the regulation actually very clearly says that in this type of case, a stipulated order, that is Regulation 8 CFR 1003.25, that when there's a stipulated request for order, if an alien is unrepresented, the immigration must determine that the alien's waiver is voluntary, knowing, and intelligent. Now, if he was illegally in the country, wouldn't he have been subject to removal in any event? What difference would this all have made? Well, if the immigration judge had actually asked Mr. Guzman whether he waived his right to a hearing, Mr. Guzman probably would have said, no, I do not. But what would have happened at the hearing, and how would that have changed the outcome? Well, he probably would have had a chance to apply for a bond, so he would have been undetained. And then he would have had a chance to marry his U.S. citizen partner. He already had two. But that's very speculative, all of that, in terms of legal consequences. If he had a hearing, he would have been removed. Well, he could have received voluntary departure. And with voluntary departure, he would have had the opportunity to come back to the United States legally after marrying a U.S. citizen. So that's the prejudice that you're identifying. That is the prejudice, yes. Let me ask you, on the regulation, did the IJ need to do that in person, or could he have just done it with the paperwork, what you're talking about, to verify that he had, on his rights, that he had not violated any of his rights? Well, I think the regulation says that immigration must determine that the alien's waiver is voluntary, knowing, and intelligent. The stipulated decision order in this case says that there was a waiver, but there's no inquiry that he made about whether the waiver was knowing and intelligent. So I would argue that his order was facially deficient. So we don't know if it could be done on the papers alone? I don't think it can, based on this regulation, and I think it would violate due process. So let's talk about voluntary departure. My question for you is, what difference would voluntary departure have made in Mr. Guzman's case? Because it looks like we don't, there's not a lot of case law for us on what a miscarriage of justice is, and a lot of it hinges on the prejudice. And so you're saying he could have sought voluntary departure. It looks like he did say that he would like to seek voluntary departure. Is that sufficient? I think it is. I think the difference between leaving the United States with a removal order and leaving with voluntary departure when you timely depart is a very different effect. If someone is removed, they have a removal order. They're banned from reentering the United States for 10 years without a waiver. Whereas with voluntary departure, he only had to deal with needing a waiver for unlawful presence, which he easily could have received in the consulate in Juarez. But he came back within four months. What do we do with that? How do we know that he would have only waited a year? I mean, we're in kind of a challenging situation at this point. I understand. So is there any law or authority or just even your best argument on what we do with that? Well, I think really I don't know why he – I can only speculate why he came back within four months, and that was because his wife was pregnant with their third child and he was very worried about her. But I think if he had had the benefit of counsel, which he didn't, he would have been able to know what he should do, how he should proceed with his case from that point forward. I'm sorry. Did he try to obtain any form of immigration relief or visa prior to 2013 when he was again in removal proceedings? So his wife filed an I-130 petition for him, but unfortunately he was not able to use that petition even though it was approved because he was subject to the permanent bar at that point. When did she do that? It is not in the record, but I do believe it was years prior to when his prior order was reinstated. Let's assume for a moment that he had gotten the relief that you now say he should have gotten, which was voluntary departure. Would that not have boxed him in, though, in 2013? Because he would have still been subject to removal pursuant to that subsequent agreement, the voluntary removal. Isn't he kind of boxed in either way? Well, I think if he had done the voluntary departure, he would have, you know, of course this is all speculative, he would have timely departed, and then he would have had the benefit of being able to come back to the United States. Well, he could have applied. Yes. But he would have been removed. He would have been removed pursuant to a removal order, which is to say when you get to 2013, you're right back where you started from. Well, he would not have had a removal order at that point. He would have only been subject to voluntary departure, which is where the immigration judge would have given him the opportunity to leave on his own and not have a removal order. And that's the prejudice, you're arguing. Yes. Now, what about the position of the government for a remand on the asylum officer's determination? What's your position on that? My position is, and we actually went to mediation on this, was that I was fine with the case being remanded, but I was not fine with the case being remanded without my client present for a hearing. But if it's remanded to have the immigration judge just state the reasons, your client wouldn't have to be present for that. Well, I think he should have the opportunity to be present. And I don't know how that hearing or him even reading his decision. But isn't that an intermediate step? In other words, it could be remanded to obtain a clarification on the immigration judge's reasoning. Now, at that point, if there's a need for a hearing, then that's a subsequent step. But the intermediate step could be conducted without him being there, could it not? I mean, I don't see how that would be okay. I just, you know, I can only say the proper course would be for my client to be present. So how would that work? Well, the United States government could parole Mr. Guzman back into the United States for a hearing, and I asked whether they could do that during mediation, and they said that they could not. So I've reached my time. I have a couple of questions, though, just before. I'm sorry to encroach on your time. You mentioned that, you know, that's the relief he could have gotten with respect to the voluntary departure order. But how certain do we need to be that he would have gotten that relief? I'm fairly certain. It's a pretty straightforward statutory application. He had the time here necessary for voluntary departure. He didn't have the criminal history. Or is it a higher standard than plausible relief? I don't think it's a higher standard than plausible. I think the immigration judges pretty readily give out voluntary departure if the person is willing to do it, and they statutorily qualify. And I guess what's your best argument on why the timeliness? The timeliness of challenging the underlying removal order? Right. Well, my best argument, I understand the jurisdictional arguments that the government has made, and I think that it's the precedent of the circuit that there is this small, this very narrow exception for being able to review the order when there's a gross miscarriage of justice. And then on the 2013 removal order, are you arguing on behalf of Mr. Guzman that he was not aware he was in and that he did not choose to sign the relevant paperwork and stated he was subject to reinstatement proceedings? I'm arguing that he should have had an opportunity to respond within that time period that they decided to reinstate his prior order. I think Morales Izquierdo basically said that there could be a time when due process could require more scrutiny of these regulations when the outcome would have been different. So I think if he'd had time to consult with an attorney in that period, say this is what happened with my underlying removal order, then I like to think that ICE would have exercised their discretion differently than they did. And then my last question here. Shouldn't he have raised any challenge to that 2007 removal order during his 2013 reinstatement proceeds when he had a chance to make a statement on the reinstatement? Apparently he chose not to. Yes. So he did do a motion to reopen of his underlying order with the Salt Lake City immigration judge. The immigration judge denied that motion to reopen. It was appealed to the BIA, and the BIA also denied the appeal. So he did challenge the underlying removal order directly to the immigration judge and the BIA. Unfortunately, those appeals were not sustained. But that was a different circuit. You know, we're bound by a different body of law here. And so I hope that the outcome will be different for this case. You want to save the balance of your time, right? Okay. Thank you. Thank you. We'll hear from the government. Good morning. Good morning, Your Honors. May it please the Court, Victor Lawrence on behalf of the Attorney General. What this petitioner is trying to do is to take the immigration judge's negative reasonable fear determination and use that as a jurisdictional springboard to go back six years ago and undo a 2007 stipulated order of removal. The Court shouldn't countenance that as it is untimely under 1252b1. Do you think it's jurisdictional? It is jurisdictional, yes. But don't we go beyond jurisdiction? If his rights were violated, I mean, I guess respond to Ms. Bechner's point on that. So she points to the Garcia de Rincon decision. But after that came Morales-Izquierdo, in which Judge Kaczynski, writing for the en banc court, seemed to indicate that there was a timeliness issue, although it wasn't specific. It could arguably be dicta, but it's on page 497 of the decision. I refer the Court specifically to that. But the wealth of the case law from around the circuits indicates that a petition for review has to be filed within 30 days, and this type of collateral attack is not permitted in those other circuits. We pointed recently to the Fourth Circuit case in Calle de Mejia, or Calle de Mejia, and also the Ninth Circuit case unpublished. One panel in Serna v. Lynch did find, and that's in our 28-J letter, did find that it was untimely as to the prior removal order. It appears that in our case law we have resolved cases in which petitioners challenged their underlying removal order by assuming their allegations are true, and we do not make a factual determination. That's what it looks like in our case law. Are we required to take Mr. Guzman's allegations as true in his declaration, and is there any path for remand for an evidentiary hearing or determination? Because what he alleges are significant due process violations. Well, Your Honor, I think what you may be referring to is in the typical motion to reopen process, the Court and the Board are supposed to consider everything that's provided in those motions to reopen as being truthful and going on that notion. But here, in this type of collateral attack, I'm not sure that there's any precedent of a requirement that his declaration be taken as truthful in attacking the 2007 order. Well, I'm trying to think of what case. I thought there was a case that, but I'll look to double-check to see if it was that type of case. But let's assume that we do for the sake of determining if there was a gross miscarriage of justice that his declarations are true. Do you agree that these due process and Fourth Amendment rights are significant? No, frankly, we don't. With respect to the Fourth Amendment rights, the only thing that they're really arguing here is that it has to do with the suppression of his identity. And this Court has ruled that identity cannot be suppressed. So I'm not really clear where they're arguing that there was such a due process violation with respect to his arrest that that should somehow undo his removal order. And with respect to the due process concern regarding voluntary departure, we would respectfully point the Court to the Tovar Linden opinion by Tovar Linden v. Ashcroft of this circuit, in which this Court said that there's no constitutionally protected interest in a purely discretionary relief of voluntary departure. So therefore, if there's no protected liberty interest in this type of relief, how could there be a due process violation, let alone a gross miscarriage of justice? That's probably the government's best argument on this issue, is it not? That this is discretionary. Absolutely. And therefore, there really can't be a due process interest because there's no liberty interest in this setting. Is that correct? That's correct. When you say it's the best argument, I don't know. I know you think there are probably other ones. But what about his due process with his right to see the IJ? Right. So remember that this immigration removal order occurred in Salt Lake City. He did a stipulated removal of order, not the immigration judge, but the DHS had him sign a stipulated removal order. There's no indication in the order itself that it was anything but voluntary. He actually signed that one as opposed to the reinstatement order, which he did not sign. So you look at the law at the time, the removal order in 2007, and the law at that time was just the regulation, 8 CFR 1003.25B. And that indicated that the waiver had to be knowing and intelligent. But there's nothing in that regulation that requires that the immigration judge actually interview the alien to determine that, in fact, it was knowing and intelligent. So you're saying that we don't look to regulation 8 CFR 1003.25? No, you do look. Or 1003.25? 1003.25. But .25B is the precise regulation. But that indicates, first of all, you're looking at the Tenth Circuit law really at this point because this developed in the Tenth Circuit. The immigration court was in the Tenth Circuit. And at that time in 2007, there were no case law decisions that indicated that the immigration judge had to interview the alien to determine that his waiver was knowing and intelligent. That case law only developed in this circuit in the cases of U.S. v. Ramos and U.S. v. Gomez after the 2007 removal order was entered. Those cases are from 2008 and 2009. So when you look and the Gomez decision also stands for the proposition that you look to the law at the time that the removal order was entered to see whether there were any due process violations. And if you look at the law in 2007 as it was in the Tenth Circuit, there was no case law interpreting the regulations or the statute. It was only the regulation itself. So I'm just curious. So you think now, though, he would have been entitled in the Ninth Circuit to a hearing before the IJ? Had his removal occurred after 2009, after the Ramos case in this circuit, this court may have had an issue with the stipulated order of removal. But that's completely not the facts here. And so do you agree he was eligible for voluntary departure? Well, eligible and being granted the relief is two different things. Don't we need to just find a plausible relief for him to find prejudice? So, I mean. Well, I know of no reason why he would not have been eligible for voluntary departure at that time. However, again, it is a purely discretionary grant of relief and not only cannot form the basis of a due process violation, but we're talking about a gross miscarriage of justice, which this court has never found. I know. So it's quite a leap. We don't have. I mean, everything we have is in memorandum dispositions that anywhere on this particular issue shed any light. In those memo and memorandum dispositions, they're the ones that say we're going to just take as true what the petitioner is saying to determine whether or not it fulfills the gross miscarriage of justice. Here, if we take what he says as true, there's some pretty significant due process violations. I'm just trying to figure out what's the standard of relief. I mean, is it plausible? Is it anything harsher to find prejudice in this case? Well, what I want to remind the court of is, as Ms. Bechner mentioned towards the end of her argument, she filed a motion to reopen on this stipulated removal order and made all those same arguments before the board, first before the immigration judge, and then before the board about there being a due process violation of gross miscarriage of justice. The immigration judge denied her motion to reopen. She appealed that to the board. The board dismissed the appeal. Those decisions are not in the record because they were not part of the administrative record that determined this case. But they're relevant for purposes of your analysis to show that she got all the, this alien got all the process that was due and could have filed a PFR on the board's dismissal of the motion to reopen, but chose not to do that for some unknown reason and instead is trying to use this case. And Ms. Bechner even admitted that she was kind of, she didn't use the form jurisdiction chopping, but she said she thought she might get a fairer shot in this court than in the Tenth Circuit. I appreciate that. I just want to know, what's your position on the level of relief? Is it a plausible relief that we would look at to see if he was eligible for miscarriage of justice and to establish prejudice? And I think, I want to make sure I understand. Is it just yes, no, some other standard? Is it plausible that he could have gotten involuntary departure? Yes. And is that, but no, is that the standard that we look toward? I think the standard that you need to look toward is the idea that voluntary departure is discretionary relief and there's no liberty interest. I understand that. So when someone, not even him, is trying to establish a miscarriage of justice, what kind of prejudice, what kind of relief? Is it plausible? I just want to know what I'm dealing with and what the department's view is. The department's view is that when you're looking at whether something is a gross miscarriage of justice as compared to a due process violation, we would suggest that a gross miscarriage of justice is several levels higher. It requires prejudice. And I'm just trying to figure out to determine prejudice, is it plausible relief? Is it actual relief has to be established? I mean, just what's the department's view on that? You know, in order to provide the department's view, I'd really have to take that back to the department. What's your view on it? My personal view? I mean, your view based on your experience and the authority that you might know. I'm just trying to figure out what's the standard that you think is necessary regarding showing prejudice to establish a miscarriage of justice. I think you have to show actual prejudice, and I don't think that's what you show. And your best of – that's fine. That's exactly what I was looking for. What's your basis for that? Well, so, again, we would like the opportunity to brief this to get the full department's view. My basis for it, if you're asking me, based on my experience of doing immigration law. I have no one else here to ask. No, I get it. I would say that based on my knowledge of what constitutes a due process violation, you have to show actual prejudice, that you actually. So that wouldn't be possible if you had a discretionary decision? Correct, Your Honor. And that's why I believe this court in Tovar Linden in 2004 indicated that you cannot have a due process violation based on a discretionary grant of relief that you've been denied. It wasn't a trick question. I just wanted to know. I also wanted to make sure I was understanding you correctly. Yes, okay. But I guess what's – I'd like your view on – because, I mean, what he alleges here is really an interesting scenario. And if he was – Mr. Guzma essentially coerced into waiving his rights to see an IJ – waiving his rights to see an IJ and challenged his case in 2007, when should he have first raised his claims of due process and Fourth Amendment violations? In 2007. At what point in time? I just want to make sure I understand that. Well, he could have raised it at the point when he was being offered the stipulated order of removal. He could have raised it within 30 days afterwards in an appeal, even though he did waive appeal through that stipulated order of removal. But at least it would have been a timely appeal if he had done so 30 days before. But also, Your Honor, again, in his motion to reopen – and we covered this, by the way, in our brief at footnote 5 and also footnote 7 in our brief – the fact that they did file a motion to reopen and had this process to determine whether or not there was a due process violation in the original order. And that went through two levels of review, the immigration judge and the board. And for some reason, they didn't do a petition for review further. I'd like to follow up on that aspect, if you don't mind. Sure. If I understand correctly, you're saying that the very issues that we now are presented by the petitioner have been brought before an IJ and the BIA, and they denied relief, right? That's – And how long ago did that occur? That occurred in 2013. So that's – December 3, 2014, was the board. Okay. So is it the department's position, the government's position, that in effect they didn't appeal that? That's res judicata, so to speak. They're done? Well, it's the department's position that that was the appropriate method to attack the – They lost. So where does that leave them? It leaves them – it should be final there. The idea – That's my question. Yes. Since this, what is brought before us, was brought before the IJ, brought before the BIA, they lost. Time has run since that time. Correct. Is that, in effect, res judicata? Have they failed to appeal? Should we even be considering this for a separate jurisdictional issue? I think it is res judicata, and I think it shows that the appropriate amount of process has been given. And you can't – there's a case that we cited in our brief that you can't just continually raise the same due process violation in different fora. So that's exactly what's going on here. Could you just comment quickly on the idea of the remand, on the asylum, and the unavailability of the petitioner to be present? Sure. So to the extent Your Honor was suggesting that there's no need for the person to be there, in that interim step of having the immigration judge write his decision, we fully agree. There has been no challenge whatsoever to the hearing that he got before the immigration judge at that time, where his counsel was able to make all the arguments that he wanted to. And that's at page 12 and 15 of the record, where his counsel indicated that he had a fear of going back as a result of this particular social group that he thought he belonged to. So there is no – By the way, that social group doesn't fly, does it? It doesn't fly, but – Your case law is real clear about that. Very clear. But nevertheless, that's what he raised at the time. And the issue here, though, is that he raised before – and I know I'm a little over, but I appreciate finishing this point. Before the asylum officer, he indicated that he also had a fear on the basis of religion. And the immigration judge did not address that in his decision. At that time, we said in the interest of justice, we think it should be remanded for the immigration judge to have a more fulsome decision to explain his reasoning. Now – and we think that that might be the proper result. But what I want to point out also is maybe there's not a – there wasn't a need to do that, because when his counsel brought this claim before the immigration judge, he didn't say anything about the religion claim. He only pursued the particular social group claim. So maybe that's why the immigration judge didn't address it. His counsel filed a brief, which is also in the record, and that brief only raises a particular social group claim. So when the immigration judge said, I concur, and I want to be clear that there were – you know, first he indicated that he didn't think there was any basis for there to be relief on the basis of race, religion, et cetera. So he did address that in the first sentence of his order. But then he said he concurred with the asylum officer. And the asylum officer's report dealt only with the issue of a particular social group. So the fact that the immigration judge left that out of the opinion may have been because he considered the other matter waived. But as we said, we agree that it would have been better if he had put that in the decision itself. But either way, whether the court remands for that decision or denies the petition for review outright, the government would be amenable to either of those results. I just have one more question. Sure. Just since we have so little case law in this area,  Well, given that this court has never found a gross miscarriage of justice and has found on numerous occasions, scores, hundreds of occasions, that there have been due process violations, I think a gross miscarriage of justice has to be an extremely significant due process violation that if this court's never seen it, then I'm not sure what it is. And I think it's very telling that this court has never found a gross miscarriage of justice. So when we're talking about this stipulated removal order, we have this allegation that he didn't understand what he was signing. That, in the government's view, does not reach the level of a gross miscarriage of justice if, in fact, there was any due process violation, which, again, we dispute. Any other questions about my colleague? No. I'm sorry we've taken you over, but thank you very much. No problem. All right, thank you. All right, let's hear a rebuttal. First of all, I would just like to point out that contrary to what the government has said, this court has found that when a petitioner was not meaningfully advised of his right to seek voluntary departure that there was a due process violation, and that was the Melendez-Castro case. So I think that there is a strong argument that Mr. Guzman was prejudiced as a result of not meaningfully being advised of his right to seek voluntary departure. Let me ask you about the hearing that you had before the IJ and the BIA. You heard me ask the government what role that should play in our decision. It's my understanding, at least the government's position, that the very arguments that you have made to us you made to them and that you did not appeal the BIA's decision. Is that race judicata? I don't believe it is race judicata. First, I want to make a point about forum shopping. I think the forum shopping that happened in this case was when Mr. Guzman was taken to Utah, Salt Lake City, out of the Ninth Circuit for his immigration. Judge decision. He was detained in Montana, which is in the circuit. Honestly, you don't need to spend any time on that. We don't fault you for anything like that. But I would be interested in your answer to my question. I don't believe that there is race judicata. Why? Because we're— You argued all of the things that you're arguing before us. The IJ and the BIA heard you, ruled against you. You didn't appeal. Why isn't that the end of the story? Well, those cases aren't a part of this record. Those decisions aren't a part of this record before this court. But it's your client. Yes. And it's these issues. Yes. Well, I believe that the Ninth Circuit has a different body of law. And I think if the IJ had applied Ramos v. U.S., they would have had a different outcome in the decision. And I don't believe that the IJ or BIA's decision was correct. Do you dispute that the law of the Tenth Circuit is the one that should have properly applied to the 2007 proceedings, I'll call them? It was in Salt Lake City. That's in the Tenth Circuit, right? Isn't that the law we would apply? Well, I think— You're not saying that we take the law of another jurisdiction and apply it to that because it's more favorable to your client's position? Well, I think that most of the due process violations happen within this circuit. And so I don't think it's— Within what circuit? Within the Ninth Circuit. And so I don't think it's unreasonable to argue that we should use the law of this circuit, where Mr. Guzman was detained for over a year, to resolve this case. Any other questions by my colleagues? All right. Thank you both for your argument in this challenging case. The case disargued is submitted.
judges: M. Smith, Murguia, Robreno